**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0414-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DANIEL P. WENDLER,

    Defendant-Appellant.

_____

          Submitted February 28, 2019 – Decided May 22, 2019

          Before Judges Simonelli and Whipple.

          On appeal from Superior Court of New Jersey, Law Division, Gloucester County, Municipal Appeal No. 11-16.

          Weir & Partners, LLP, attorneys for appellant (Georgios Farmakis, on the briefs).

          Charles A. Fiore, Gloucester County Prosecutor, attorney for respondent (Dana R. Anton, Senior Assistant Prosecutor, and Monica A. Bullock, on the brief).

PER CURIAM

Defendant Daniel P. Wendler appeals from the Law Division's August 15, 2017 order entered after a judge, conducting a trial de novo, found him guilty of driving while intoxicated (DWI), N.J.S.A. 39:4-50(a); operating a motor vehicle with a controlled dangerous substance, N.J.S.A. 39:4-49.1; and possession of fifty grams or less of marijuana, N.J.S.A. 2C:35-10(a)(4). For the following reasons, we affirm.

We discern the following facts from the record. On April 3, 2015, Officer Marc Stevens was patrolling near a Walmart parking lot in Monroe Township. Stevens saw a silver pick-up truck in the parking lot with the engine running and parked away from other vehicles. When Stevens approached the vehicle, he saw defendant slumped over the steering wheel. Stevens lit the vehicle with his spotlight to wake defendant. Defendant did not react when Stevens shined his light in the car.

Stevens approached the vehicle and woke defendant up by banging on the car window and shouting through an open rear window. Stevens told defendant who he was and why he was there, but defendant was unresponsive to questions, instead he was fumbling through paperwork in his car. Defendant eventually rolled down his window and appeared dazed, confused, and incoherent. When

Stevens asked for defendant's identification, defendant handed him several store receipts.

Stevens asked defendant to exit the vehicle so he could perform field sobriety tests, though Stevens smelled no alcohol coming from defendant. Stevens administered the horizontal gaze nystagmus test, and it was inconclusive. Defendant did not properly perform either the one-leg-stand test or the walk-and-turn test. Stevens arrested defendant, placed him in the police vehicle, and then searched defendant's car for defendant's insurance and registration documents. Stevens looked in the center console, where he found a small bag of suspected marijuana. Stevens found defendant's documentation in the glovebox. The police brought defendant to the police station and gave him an Alcotest, which yielded a reading of 0.0.

The police charged defendant with the aforementioned motor vehicle and disorderly person offenses. Defendant moved to suppress, challenging the initial seizure of the marijuana based on lack of probable cause. After a hearing, on November 10, 2015, the municipal court judge denied the motion because he found Stevens credible and found probable cause unnecessary because Stevens was performing a community caretaking function when he found defendant slumped over in the vehicle. The judge found, thereafter, the officer had the

3

authority to search the car for license and insurance documents under <u>State v. Keaton</u>, 222 N.J. 438 (2015). The matter was tried in municipal court on July 19, 2016, and defendant was found guilty. The municipal court judge found proof of intoxication beyond a reasonable doubt under the observation standard enunciated in <u>State v. Bealor</u>, 187 N.J. 574 (2006), and the presence of marijuana in the car.

The matter was tried de novo on August 10, 2017, in the Law Division. Judge Kevin T. Smith issued a thorough, forty-one page written opinion on August 15, 2017, denying defendant's motion to suppress, and finding defendant guilty of operating a vehicle with a controlled substance, driving while intoxicated, and possession of fifty grams or less of marijuana. This appeal followed.

Defendant raises the following points on appeal:

> I. STANDARD OF REVIEW.
>
> II. THE COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE RECOVERED AFTER AN UNCONSTITUTIONAL SEARCH AND SEIZURE.
>
>> A. THE SEARCH AND SEIZURE WAS UNCONSTITUTIONAL BECAUSE THERE WAS NO WARRANT AND NO FACTS GAVE RISE TO A REASONABLE SUSPICION OF CRIMINAL ACTIVITY.

4

B. THE POST-ARREST SEARCH OF APPELLANT'S VEHICLE WAS INDEPENDENTLY UNCONSTITUTIONAL.

III. EVEN IF THE EVIDENCE WAS NOT SUPPRESSED, THE COURT ERRED IN AFFIRMING APPELLANT'S DWI CONVICTION.

A. THE STATE, WHICH PROVIDED NO EXPERT OPINION OF INTOXICATION, FAILED TO SATISFY ITS BURDEN IN PROVING APPELLANT WAS INTOXICATED BEYOND A REASONABLE DOUBT.

B. APPELLANT WAS NOT OPERATING A MOTOR VEHICLE AT THE TIME OF HIS ARREST.

IV. THE COURT ERRED IN AFFIRMING APPELLANT'S CONVICTION UNDER [N.J.S.A.] 39:4-49.1.

When we review the Law Division's de novo review of a municipal appeal we consider whether there is sufficient, credible evidence present in the record to uphold the findings of the Law Division. State v. Johnson, 42 N.J. 146, 162 (1964). Just as the Law Division is not as well situated as the municipal court to determine credibility, neither are we, and thus, we do not make new credibility findings. State v. Locurto, 157 N.J. 463, 470-71 (1999). Indeed, "[w]e do not weigh the evidence, assess the credibility of the witnesses, or make conclusions about the evidence." State v. Barone, 147 N.J. 599, 615 (1997). Nevertheless,

5

"[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

With this standard in mind, we reject defendant's arguments and affirm his conviction for the reasons expressed by Judge Smith. We only add the following comments.

Defendant argues the court erred in denying his motion to suppress the evidence resulting from the search. Defendant asserts Stevens's initial actions were not in furtherance of community caretaking, but were the beginning of a criminal investigation of alleged criminal trespassing.

"The community-caretaking doctrine recognizes that police officers provide 'a wide range of social services' outside of their traditional law enforcement and criminal investigatory roles." State v. Edmonds, 211 N.J. 117, 141 (2012) (quoting State v. Bogan, 200 N.J. 61, 73 (2009)). To determine whether an action falls under the community-caretaking doctrine, the officer should be engaged in behavior "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute" and "objectively reasonable." State v. Vargas, 213 N.J. 301, 315, 318 (2013) (quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973)). After

6

reviewing the record, we conclude there was sufficient credible evidence Stevens was engaged in community-caretaking.

Testifying at the suppression hearing, Stevens acknowledged after he identified defendant at the scene, he recalled defendant was prohibited from entering that particular Walmart's property. However, Stevens was not familiar with defendant's car nor was his initial interaction with defendant based on suspicion of trespassing. As the trial court found Stevens to be a credible witness and credited his version of the facts, we see no reason to disturb this finding.

Stevens saw a running car with the driver slumped over the steering wheel. The driver did not initially react when Stevens shined his light in the car. Given these facts, it was objectively reasonable for Stevens to be concerned defendant might have been ill or injured, intoxicated, or otherwise in need of aid, and his attempt to rouse defendant was justified under the community-caretaking doctrine.

While Stevens's initial acts were for community-caretaking, at some point the stop transformed into an investigatory stop. An investigatory stop is based on "[r]easonable suspicion[,] . . . a lower standard than the probable cause necessary to sustain an arrest." State v. Stovall, 170 N.J. 346, 356 (2002). Based

on the totality of the circumstances, an officer must have articulable reasons or a particularized suspicion of criminal activity to justify an investigatory stop. State v. Davis, 104 N.J. 490, 504 (1986). When an officer commands a driver to exit a vehicle, this constitutes a seizure. State v. Smith, 134 N.J. 599, 609 (1994). New Jersey courts have adopted the United States Supreme Court's view, articulated in Pennsylvania v. Mimms, 434 U.S. 106 (1977), that when an officer has already detained a driver, the request to step out of a vehicle is de minimis. Smith, 134 N.J. at 618 (agreeing with Mimms permitting an officer to order a driver to exit a vehicle, but declining to extend the per se rule to passengers).

Stevens approached defendant sleeping in a running car and observes that upon waking, defendant seemed "dazed and confused" and was "incoherent at the time." Considering the totality of the circumstances, we agree with the trial court: Stevens had reasonable suspicion to suspect that the individual might be intoxicated and about to drive and this justified the investigatory stop.

If an officer gives a defendant the opportunity to present his vehicle credentials, but the defendant is unable or unwilling to do so, an officer may conduct a search of the vehicle for those credentials. Keaton, 222 N.J. at 442-43. When searching the vehicle for evidence of ownership, the officer must

confine his search "to the glove compartment or other area where a registration might normally be kept in a vehicle[.]" State v. Hamlett, 449 N.J. Super. 159, 172-73 (App. Div. 2017) (alteration in original) (quoting State v. Jones, 195 N.J. Super. 119, 122-23 (App. Div. 1984)). At the suppression hearing, defendant testified Stevens never asked for vehicle credentials. Stevens testified he did ask for credentials, and defendant handed him receipts. The trial court credited Stevens's version of the facts. As instructed by Locurto, 157 N.J. at 470-71, we defer to the factual determination of the trial court that Stevens asked defendant for his credentials and defendant was unable to provide them.

Stevens searched the center console armrest in addition to the glove compartment of defendant's vehicle. There was no evidence Stevens knew in advance there was marijuana in the car, and he was not searching the car specifically for marijuana. Stevens was permitted to search for vehicle credentials in the places were the documents might reasonably be kept, such as a center console, and he found marijuana in plain view. Accordingly, we discern no error in the judge's determination.

We reject defendant's argument that the State cannot prove he was under the influence of a narcotic, hallucinogenic, or habit-producing drug at the time of his arrest. N.J.S.A. 39:4-50(a) provides in pertinent part: "a person who

A-0414-17T1

operates a motor vehicle while under the influence of intoxicating . . . narcotic, hallucinogenic or habit-producing drug" shall be subject to certain escalating penalties. "[T]he State's burden of proof unquestionably is beyond a reasonable doubt." Bealor, 187 N.J. at 586.

To prove whether a defendant was under the influence, the State must show "beyond a reasonable doubt that, at the time of his arrest, defendant suffered from 'a substantial deterioration or diminution of the mental faculties or physical capabilities[.]'" Id. at 590 (quoting State v. Tamburro, 68 N.J. 414, 421 (1975)). A motorist is under the influence when his or her use of drugs has caused a substantial diminution of faculties and capabilities, Tamburro, 68 N.J. at 421, which has altered his or her coordination and mental faculties so as to make it unsafe for him or her to drive. State v. DiCarlo, 67 N.J. 321, 328 (1975). "[C]ompetent lay observations of the fact of intoxication, coupled with additional independent proofs tending to demonstrate defendant's consumption of narcotic, hallucinogenic or habit-producing drugs as of the time of the defendant's arrest, constitute proofs sufficient to allow the fact-finder to conclude, without more, that the defendant was intoxicated." Bealor, 187 N.J. at 577. "The statute does not require that the particular narcotic be identified." Tamburro, 68 N.J. at 421. Nor does it "define the quantum of narcotics,

hallucinogens or habit-producing drugs required in order to violate its prohibition." Bealor, 187 N.J. at 589. "Instead, as with alcohol intoxication, the issue is simple: was the defendant under the influence of a narcotic, hallucinogen or habit-producing drug while he operated a motor vehicle." Ibid. (quotation omitted). Here, although there was no blood test to show the defendant had actually consumed marijuana, the presence of marijuana and the officer's other observations were sufficient proofs to sustain the conviction.

We also reject defendant's contention he was not driving at the time of arrest, and thus, he cannot be convicted of driving under the influence, N.J.S.A. 39:4-50(a). For the purpose of N.J.S.A. 39:4-50(a), "operates or drives" has been interpreted to occur when an individual "enters a stationary vehicle" in a public place, turns on the ignition and remains at the steering wheel with the intent to drive. State v. Sweeney, 40 N.J. 359, 360-61 (1963). Intent to drive can be inferred by the fact finder based on the evidence presented. Id. at 361.

The trial court credited Stevens's testimony that when he approached defendant's vehicle, it was running and the keys were in the ignition. There was no evidence presented showing defendant intended to walk home or was within walking distance of his home. Further, no evidence suggested defendant was sleeping until he was no longer intoxicated. See State v. Daly, 64 N.J. 122, 125

(1973) (the court determined the defendant had been sleeping in his running car over an hour without driving and thus intent to drive could not be proven). Given these facts, the trial judge did not err in finding defendant was "operating a motor vehicle" under the meaning of N.J.S.A. 39:4-50(a).

Defendant also contends he cannot be convicted of N.J.S.A. 39:4-49.1 for operating a motor vehicle on any highway while knowingly in possession of a controlled dangerous substance because a parking lot is not a highway. N.J.S.A. 39:1-1 defines a "highway" as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." Defendant argues a private parking lot cannot be a highway under N.J.S.A. 39:1-1. While there is little authority addressing the question of what highway means under N.J.S.A. 39:1-1, we have said parking lots are sometimes "quasi-public place[s]." Brown v. Mortimer, 100 N.J. Super. 395, 405 (App. Div. 1968) ("While privately owned, the parking lot was clearly a quasi-public place and subject to applicable provisions of the Motor Vehicle Act."); State v. Gillespie, 100 N.J. Super. 71, 75 (App. Div. 1968) ("The operation of a motor vehicle while under the influence of intoxicating liquor in a quasi-public place involves extraordinary danger of injury to the

driver or other members of the public or damage to their property, just as does driving in that condition on a public highway.").

Here, the Walmart parking lot was "open to the use of the public for the purposes of vehicular travel." N.J.S.A. 39:1-1. Whether a parking lot is open to the public for the purposes of travel is a fact sensitive inquiry and does not lend itself to broad rules. We are satisfied that under the circumstances of this case, the record supports the conclusion here.

Defendant's other arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13                                                          A-0414-17T1